UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TYRONE WILSON | CIVIL ACTION |
| VERSUS | NO. 11-2803 |
| BURL CAIN | SECTION: "G" (5) |

## ORDER AND REASONS

Before the Court is Petitioner Tyrone Wilson's ("Petitioner") "Motion for Production of Exculpatory and Impeaching Evidence."[1] The Court has reviewed and considered the Motion, the record, and the applicable law. No opposition has been filed into the record. For the reasons that follow, the Court will grant the Motion.

### I. Background

*A. Procedural Background*

On August 11, 2005, Petitioner and his co-defendant, Hampton Franklin, were indicted for armed robbery (count one) and aggravated rape (count two). Petitioner pleaded not guilty to both charges. On December 7, 2007, following a five day trial, Petitioner was found guilty as charged on both counts. His motions for a new trial and post-verdict judgment of acquittal were denied and on November 3, 2008, he was sentenced on count one (armed robbery) to serve twenty-five years at hard labor with credit for time served and on count two (aggravated rape) to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

---

[1] Rec. Doc. 30.

1

Petitioner's conviction and sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on February 17, 2010, and again by the Louisiana Supreme Court on October 15, 2010. Likewise, Petitioner's application for state post-conviction relief was denied by the trial court on February 8, 2011, and the Louisiana Fourth Circuit Court of Appeal on September 21, 2011. On July 21, 2011, Petitioner filed a writ of certiorari with the Louisiana Supreme Court. Petitioner later filed a federal *habeas* petition on October 25, 2011 in the United States District Court for the Eastern District of Louisiana.[2] As a part of that proceeding, this present "Motion for Production of Exculpatory and Impeaching Evidence" was filed on June 19, 2013.[3]

### B. Factual Background

On or about Sunday, June 19, 2005 at approximately 1:15 p.m., a curator was working in her office at the Woldenberg Art Center located at Tulane University.[4] The curator received a knock on the door, and a voice asked her where Room 215 was. The curator indicated where the room was and kept working.

Approximately five minutes later, a man knocked on the door of the victim's office again, stating that he could not find the room.[5] When the victim opened her office door to help him, the man stated, "Give me all your money, bitch," and lifted his shirt to reveal a gun in his waistband. A second man walked up after the first man.[6] The victim gave the two men the $13 cash she had in her back pocket, but they demanded more. They charged inside of the woman's office, slammed the door shut, and locked it. The

---

[2] Rec. Doc. 1 at 1.

[3] Rec. Doc. 30.

[4] R. Vol. 3 at 663.

[5] *Id.* at 625.

[6] *Id.* at 627, 666.

second man, who a jury found to have been Petitioner, told her to sit on the floor as he held a gun to her head.[7] The woman told them that that was all the money she had. The first man, who a jury found to have been Petitioner's co-defendant Hampton Franklin, ransacked her office and the adjoining annex in an attempt to find more money.

The man found to have been Petitioner took her car keys off of her desk, and asked the woman what kind of car she drove. The woman gave him the make, model, and year of the car, but he told her that she was lying and hit her in the head with the barrel of his gun.[8] He then told her not to look at him and held the gun to her head.[9] With the gun against the victim's temple, the man forced the woman to perform oral sex on him.[10]

The other man returned from the annex to the office where the victim and the man found to be Petitioner were. The man asked Petitioner if he had any condoms. Petitioner said that he did, took one out of his pocket, and handed it to the man.[11] Standing behind the victim, that man ordered the victim to take her pants off. The man raped the victim anally while the man found to be Petitioner continued to rape the victim orally.[12]

The victim was raped by the two men simultaneously for approximately 22 to 26 minutes.[13] At the end of that time, the victim, in an attempt to escape, flipped over the chair, causing the man found to be Franklin to fall to the ground. As the woman stood up to flee, the man found to be Petitioner pushed her into the door as he ran out, and the man

---

[7] *Id.* at 628.

[8] *Id.* at 630.

[9] *Id.* at 632.

[8] *Id.* at 634–635.

[11] *Id.* at 636.

[12] *Id.* at 637–638.

[13] *Id.* at 646.

found to be Franklin hit her in the head with the butt of his gun.[14] The perpetrators then fled the scene.

The victim was later transported to Baptist Hospital, and subsequently to Charity Hospital, where she was administered a rape kit.[15] The victim's hair was combed for evidence, her mouth was swabbed for the presence of semen, and her fingernails were scraped for evidence. Her vaginal area was swabbed and examined for tears.[16] A rectal examination was also performed and her rectus swabbed for the presence of semen.[17]

While several fingerprints were lifted from the victim's office and doorway, the public had access to the building that she worked in,[18] and the fingerprints lifted were not suitable for a proper identification.[19] Blood was retrieved from the crime scene that belonged to the victim.[20] DNA was also recovered from the crime scene, but because it was recovered from common areas, it returned no match.[21] Finally, officers recovered a white t-shirt from Petitioner's bedroom with blood droplets on it.[22] However, due to Hurricane Katrina testing was unable to be performed.[23] No seminal fluid was found at the scene.

---

[14] *Id.* at. 641–642.

[15] *Id.* at 652.

[16] *Id.* at 600.

[17] R. Vol. 2 at 503.

[18] *Id.* at 477.

[19] *Id.* at 538.

[20] *Id.* at 479.

[21] *Id.* at 548.

[22] *Id.* at 496.

[23] R. Vol. 3 at 572–573, 578.

4

## II. Arguments

*A. Petitioner's Arguments*

Petitioner argues that he is entitled to "any and all exculpatory and/or impeaching evidence," citing *Brady v. Maryland*,[24] *Giglio v. United States*,[25] *Kyles v. Whitley*,[26] the Louisiana Code of Criminal Procedure, the Louisiana State Constitution, and the United States Constitution.[27] Petitioner does not analyze any of these authorities for the Court.

*B. State's Arguments*

The State of Louisiana did not file a brief in opposition to Petitioner's motion despite receiving electronic notice of the filing on June 21, 2013.

## IV. Law and Analysis

Per the Supreme Court's *Brady v. Maryland* decision, prosecutors have a duty to disclose exculpatory evidence even if not requested to do so.[28] In *Brady v. Maryland*, the U.S. Supreme Court held that such a requirement follows from constitutional due process and is consistent with the prosecutor's duty to seek justice.[29] Under *Brady*, the prosecutor must disclose evidence or information that would prove the innocence of the defendant or would enable the defense to more effectively impeach the credibility of government

---

[24] 373 U.S. 83 (1963).

[25] 405 U.S. 150 (1972).

[26] 514 U.S. 419 (1995).

[27] Rec. Doc. at 1–2.

[28] 373 U.S. at 87.

[29] *Id.* at 87–88.

5

witnesses.[30] Evidence that would serve to reduce the defendant's sentence must also be disclosed by the prosecution.[31]

Petitioner here has a right under Due Process to any and all exculpatory evidence, including evidence that may cast doubt on his guilt or reduce his term of life imprisonment. Under *Brady*, this evidence should have been disclosed to Petitioner prior to his trial. If the State has not done so, the State must produce to Petitioner any and all exculpatory evidence.

### V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner Tyrone Wilson's Motion for Production of Exculpatory and Impeaching Evidence is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this ___5th___ day of March, 2014.

*[signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[30] *Id.* at 88.

[31] *Id.* at 87–88 ("A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant.").